UNITED STATES of America ex rel. William J. EGBERT, Petitioner,

v.

WARDEN, HOUSE OF DETENTION FOR MEN, 1 Court Square, LONG ISLAND CITY, N. Y., Respondent.

No. 69 Civ. 5618.

United States District Court,
S. D. New York.

Jan. 22, 1970.

Louis J. Lefkowitz, Atty. Gen. of New York, for respondent, by Thomas Riccobono, Asst. Atty. Gen., New York City.

Fuller, Hopkins, Lawton & Taussig, New York City, for petitioner.

MANSFIELD, District Judge.

Petitioner, who is presently held in the House of Detention in Long Island City pursuant to a warrant issued for his arrest as a parole violator, seeks a writ of habeas corpus directing his release on grounds that there was no reasonable cause for the issuance of the warrant. The facts alleged—which we take as true in the absence of contradiction by the respondent—are as follows:

Petitioner was convicted in New York County of manslaughter in late 1964 or early 1965 and sentenced to two and one-half to five years in state prison. He was released from prison on March 16, 1967, and remained on parole without complaint of violation until November 25, 1969. On that date he received a telephone call from his parole officer, who requested that he come down to the office "to sign some papers." When he did so on the following day after work, he was locked up and has remained in custody ever since.

Petitioner's parole officer advised him that a telephoned complaint had been made against him, reporting that during a verbal altercation on the telephone on November 23 with the stepfather of his son Vincent, petitioner had threatened "to come over there and shoot him," or words to that effect. It appears that the resulting inference that petitioner possessed a gun (which, if true, would have constituted a violation of the conditions of his parole) served to supply the requisite "reasonable cause" for the warrant for petitioner's arrest and deten-

tion.[1] It also apparently served as the basis for warrantless searches of the apartments of petitioner's sister and fiancee. Petitioner denied that either he or anyone else in his family had a gun, and it does not appear that any weapon was in fact found.

Attempts by petitioner's attorney, Mr. William Fuller, to discover the basis for his client's detention, or indeed even to see petitioner in jail, have been severely hampered by the insistence of the parole authorities that since petitioner will not be entitled to be represented by counsel at his parole revocation hearing, Correction Law § 218,[2] there is no reason to allow a lawyer any access whatsoever either to petitioner or to any information about him. Mr. Fuller was finally allowed to visit petitioner, after pursuing his request well up the parole system's chain of command, but is still forced to rely on what little the parole authorities have told his client for information as to the alleged parole violation and the procedures followed by the parole authorities in arresting and jailing petitioner.

Petitioner does not contend that he is entitled to representation by counsel at the parole revocation hearing—which, after nearly two months, has still not been held.[3] Nor does he ask this court to hold such a revocation hearing in place of the parole board. His basic contention is simply that there was no reasonable cause to believe that he had violated the conditions of his parole in any important respect, Correction Law § 216,[4] that the warrant for his arrest and detention was therefore invalid, and in consequence that he is being unlawfully deprived of his liberty. The remedy he seeks, apart from his ultimate goal of release, is a hearing at which the facts surrounding the issuance of the warrant may be examined to see whether the parole authorities did have any substantial basis for the issuance of the warrant, or whether, as he contends, their action was arbitrary, capricious and without foundation in fact.

Petitioner has made no application to any court of the state of New York for the relief he seeks here. He neverthe-

1. Section 216 of the New York Correction Law, McKinney's Consol.Laws, c. 43, provides in part:

    "If the parole officer having charge of a paroled prisoner * * * shall have *reasonable cause* to believe that such prisoner has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect, such parole officer shall report such fact to a member of the board of parole or to any officer of the division of parole designated by such board, who thereupon may issue a warrant for the retaking of such prisoner and for his temporary detention or return to a designated prison. In any case where a parole officer has *reasonable cause* to believe that any such parolee has violated the conditions of his parole in an important respect, such parole officer may retake such parolee and cause him to be temporarily detained without a warrant. * * * A warrant issued pursuant to this section, or a written request for temporary detention signed by a parole officer who has arrested a parolee without a warrant, shall constitute sufficient authority to the superin-

    tendent or other person in charge of any jail, penitentiary, lockup or detention pen to whom it is delivered to hold in temporary detention the parolee named therein; provided, however, that temporary detention pursuant to a written request which is not accompanied by a warrant shall not exceed a period of twenty-four hours, and if a warrant be not delivered to the person in charge of the detention facility prior to the expiration of such twenty-four hour period the parolee must be released at the expiration of such twenty-four hour period." (Emphasis added)

2. "The board of parole shall, as soon as practicable, give such parole violator an opportunity to appear personally, *but not through counsel or others*, before three members of such board of parole and explain the charges made against him." (Emphasis added)

3. It should be noted that § 218 directs that the parole board "shall, *as soon as practicable*," grant hearings to parolees charged with parole violations. Respondent has offered no explanation for the unconscionable delay in this case.

4. *See* note 1 *supra*.

less urges that he has met the exhaustion requirements of 28 U.S.C. § 2254. "If no remedy is available under state law at the time petitioner wants to raise his contention, then he need not exhaust. Fay v. Noia [372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)]. That is the allegation in the instant petition." It is petitioner's claim that the New York courts will take the same view of his right to counsel as the parole authorities and will, as his attorney puts it, "throw the statute [Correction Law § 218] right in my face and I won't get a hearing."

If we agreed with petitioner that the New York state courts would certainly refuse to entertain his claims, we might well accept his contention that there is no need for exhaustion of state remedies in his case. Our research, however, suggests not only that petitioner has an excellent chance of obtaining the hearing he seeks on the validity of the warrant for his arrest, but also that he might be successful in arguing more broadly that he is entitled to representation by counsel at any subsequent parole revocation hearing. Accordingly, we dismiss his petition for failure to meet the exhaustion requirements of 28 U.S.C. § 2254.

As Justice Chimera wrote in Menechino v. Division of Parole, 57 Misc.2d 865, 293 N.Y.S.2d 741 (Sup.Ct., Spec.T., N.Y.County, 1968), rev'd, 32 A.D.2d 761, 301 N.Y.S.2d 350 (2d Dept. 1969):

> "The present dialogue and decisional trend throughout the land seems to suggest that at *any* stage of *any* proceeding involving a person's liberty, an 'accused' is entitled to a hearing as a matter of constitutional right; he must be afforded the same opportunity to defend himself and explain his actions as that afforded a defendant in a court action; that both the right to counsel and to meaningful advice with respect to such right are concomitants of such a hearing and perhaps the most important individuating notes of due process." (293 N.Y.S.2d at 742)

New York has not yet gone so far in the case of post-conviction proceedings; it is, for example, settled that a prospective parolee has no constitutional right to be represented by counsel at a hearing before the prison board of parole. Briguglio v. New York State Board of Parole, 24 N.Y.2d 21, 298 N.Y.S.2d 704, 246 N.E.2d 512 (1969). On the other hand, there is solid authority for the proposition that in a revocation of probation proceeding—where the sentence imposed by the trial court may be changed (Code Cr.Proc. § 935)—the alleged violator is entitled not only to counsel but to be informed of that right. People v. Hamilton, 26 A.D.2d 134, 271 N.Y.S.2d 694 (4th Dept. 1966); People v. Reynolds, 25 A.D.2d 487, 266 N.Y.S.2d 604 (4th Dept. 1966); People ex rel. Decker v. Martin, 57 Misc.2d 57, 291 N.Y.S.2d 408 (Sup.Ct., Onondaga County, 1968). On the question of the right to counsel at a parole revocation hearing the cases are divided, and the Court of Appeals has not yet settled the issue. The majority view is that there is no such right, and that the legislature made a permissible policy determination in providing, in § 218 of the Correction Law, that alleged parole violators shall be given "an opportunity to appear personally, but not through counsel or others" to explain the charges made against them. People ex rel. Johnson v. Follette, 58 Misc.2d 474, 295 N.Y.S.2d 565 (Sup. Ct., Dutchess County, 1968); Menechino v. Division of Parole, 32 A.D.2d 761, 301 N.Y.S.2d 350 (1st Dept. 1969), rev'g 57 Misc.2d 865, 293 N.Y.S.2d 741 (Sup.Ct., Spec.T., N.Y.County, 1968); People ex rel. Smith v. Deegan, 32 A.D.2d 940, 303 N.Y.S.2d 789 (2d Dept. 1969); People ex rel. Ochs v. LaVallee, 33 A.D.2d 80, 307 N.Y.S.2d 982 (3d Dept. 1969). See also People ex rel. Harris v. Mancusi, 32 A.D.2d 873, 302 N.Y.S.2d 1013 (4th Dept.) (mem.), motion for leave to appeal denied 25 N.Y.2d 740, 304 N.Y.S. 2d 1029, 251 N.E.2d 808 (1969); People ex rel. Rodriguez v. Mancusi, 32 A.D.2d 874, 302 N.Y.S.2d 1013 (4th Dept.) (mem.), motion for leave to appeal denied, 25 N.Y.2d 740, 304 N.Y.S.2d 1029, 251 N.E.2d 808 (1969); and see two cases decided by the Sup.Ct.Spec.T.

Westchester County: People ex rel. Jones v. Deegan, N.Y.L.J. 10/24/68, p. 19, col. 6; People ex rel. Trapense v. Deegan, not reported. Cf. Schwartz-berg v. Oswald, 8 A.D.2d 570, 183 N.Y.S. 2d 521 (3d Dept. 1959) (dictum).

In People ex rel. Combs v. LaVallee, 29 A.D.2d 128, 286 N.Y.S.2d 600, appeal dismissed,[5] 22 N.Y.2d 857, 293 N.Y.S. 2d 117, 239 N.E.2d 743 (1968), however, the Appellate Division for the Fourth Department granted relief in a habeas corpus proceeding by an alleged parole violator, ordering the Board of Parole to hold a new revocation hearing at which the petitioner was to have the right to be represented by counsel. The court based its decision upon New York's decisional law and the state constitutional provisions pertaining to the right to counsel and the guarantee of due process. "When all the legal niceties are laid aside," wrote Justice Bastow,

> "a proceeding to revoke parole involves the right of an individual to continue at liberty or to be imprisoned. It in-

volves a deprivation of liberty just as much as did the original criminal action and, it is submitted, falls within the due process provision of section 6 of Article 1 of our State constitution." (286 N.Y.S.2d at 603.)[6]

With the reversal of Menechino v. Division of Parole, 57 Misc.2d 865, 293 N.Y. S.2d 741 (Sup.Ct., Spec.T., N.Y.County, 1968), by the Appellate Division for the First Department, 32 A.D.2d 761, 301 N.Y.S.2d 350 (1969), there is only a dictum in a dissent by Chief Judge Fuld in People v. Simons,[7] 22 N.Y.2d 533, 293 N.Y.S.2d 521, 240 N.E.2d 22 (1968), to support the *Combs* view. Nevertheless, with the issue as yet undecided by the Court of Appeals, and given the generally expanding contours of the right to counsel, we think petitioner here has more than mere room for argument on the matter in the New York courts.

More important, the hearing petitioner seeks on the validity of the warrant for his arrest may well be available to him upon proper application to the state

---

5. Upon the ground that "the order appealed from does not finally determine the proceeding within the meaning of the Constitution." See the brief discussion of this dismissal in Menechino v. Division of Parole, 57 Misc.2d 865, 293 N.Y.S.2d 741, 744 (Sup.Ct., Spec.T., N.Y.County, 1968), rev'd, 32 A.D.2d 761, 301 N.Y.S.2d 350 (2d Dept. 1969).

6. It should be noted that at the time *Combs* was decided, § 218 of the Correction Law provided that the board of parole

> "shall, as soon as practicable, hold a parole court at such prison or institution and consider the case of such parole violator, who shall be given an opportunity to appear personally, but not through counsel or others, before such board of parole and explain the charges made against him."

The present wording was adopted by ch. 203 [1968] N.Y.Laws, approved and effective April 11, 1968. At least one case disagreeing with the result reached in *Combs* has suggested that the subsequent amendment of § 218 removing the term "parole court" has deprived *Combs* of precedential value. People ex rel. Ochs v. LaVallee, 33 A.D.2d 80, 81, 307 N.Y.S. 2d 982 (3d Dept.1969). While the Appellate Division for the Fourth Department

itself has noted that "We do no [sic] reach or pass upon the effect, if any, that the recent amendment (L.1968, ch. 203) may have had upon the conclusion reached in Combs," People ex rel. Harris v. Mancusi, 32 A.D.2d 873, 302 N.Y.S.2d 1013 (4th Dept.1969), the reasoning of the *Combs* opinion relies far more upon broad considerations of due process and the substantive consequences of parole revocation proceedings than upon verbal parallels, the implication in People ex rel. Johnson v. Follette, 58 Misc.2d 474, 295 N.Y.S.2d 565, 572 (Sup.Ct., Dutchess County, 1968), to the contrary notwithstanding. See the reference to the 1968 amendment in Menechino v. Division of Parole, 57 Misc.2d 865, 293 N.Y.S.2d 741, 745 (Sup. Ct., Spec.T., N.Y.County, 1968), rev'd 32 A.D.2d 761, 301 N.Y.S.2d 350 (2d Dept. 1969).

7. "I am inclined to the view that a parolee is also entitled to be represented by counsel in a parole revocation proceeding which is truly independent of, and unrelated to, a criminal prosecution brought against the parolee. (Cf. Mempa v. Rhay, 389 U.S. 128 [88 S.Ct. 254, 19 L.Ed.2d 336] * * *)" (22 N.Y. 2d at 545, 293 N.Y.S.2d at 531, 240 N.E.2d at 28–29.)

courts by way of either Article 78 of the CPLR or a writ of habeas corpus, independent of any ruling on a general right to counsel at parole revocation hearings. He is not seeking review of a discretionary determination made by the board of parole after an administrative hearing. What he wants is review of the procedure followed in issuing the warrant on which his detention is based, to see whether it squares with the requirements of § 216 of the Correction Law.[8] As the court wrote in People ex rel. Johnson v. Follette, 58 Misc.2d 474, 295 N.Y.S.2d 565 (Sup.Ct., Dutchess County, 1968), in *rejecting* the argument that counsel was required at parole revocation hearings:

"There is a firm line of authority that the Parole Board's determination on the question of revocation is not subject to judicial review. [citations omitted] But whatever the Board's determination may be on the merits, it must be arrived at according to law. (Hines v. State Bd. of Parole, 293 N.Y. 254, [56 N.E.2d 572] (1944)) Thus the manner in which the Board reaches its determination must meet the standard of procedural due process. Indeed, if there is absolutely no factual basis for the violation charged, one court has held that the determination made, not just the procedure employed, may be the subject of judicial review. (People ex rel. Marvin v. McDonnell, 280 App. Div. 367, 113 N.Y.S.2d 585 * * *.). (295 N.Y.S.2d at 569.)

*McDonnell* held that where a petitioner had been incarcerated as a parole violator for failing to report to parole authorities, he was entitled to a hearing before the Supreme Court on his contention that he had never received from the parole commission the required notice of his obligation to report to it.

"As a parole violator relator's present detention would be proper, but if no violation is established then his incarceration is illegal and he is entitled to his discharge." (113 N.Y.S.2d at 587.)

See also People ex rel. Allen v. Murphy, 19 A.D.2d 774, 241 N.Y.S.2d 549 (4th Dept. 1963). There petitioner claimed that the parole board had improperly interrupted the running of his sentence by turning him over to other jurisdictions following his arrest for a parole violation. In the face of a record insufficient for determination of the facts of the case, the court directed a hearing at which relator could have assigned counsel if requested and full inquiry could be made into the question presented.

Petitioner's case would seem to fall squarely within the ambit of the *McDonnell* holding. Nor is *Johnson* alone in distinguishing questions of procedural due process from discretionary determinations in passing upon the right to a hearing and representation by counsel in parole revocation proceedings. See, e.g., People ex rel. Ochs v. LaVallee, 33 A.D. 2d 80, 82, 307 N.Y.S.2d 982 (3d Dept. 1969); People ex rel. Smith v. Deegan, 32 A.D.2d 940, 303 N.Y.S.2d 789, 795–796 (2d Dept. 1969) (Hopkins, J., concurring); Briguglio v. New York State Bd. of Parole, 24 N.Y.2d 21, 298 N.Y.S.2d 704, 707n., 246 N.E.2d 512 (1969). We cannot agree that the state courts will refuse to entertain petitioner's claims, and accordingly dismiss the petition for failure to exhaust available state remedies as required by 28 U.S.C. § 2254.

It is so ordered.

---

8. *See* note 1 *supra.*