**Emma GRIER et al., Plaintiffs,**

v.

**Albert H. BOWKER, individually and as Chancellor of the City University of New York, et al., Defendants.**

**No. 70 Civ. 2358.**

United States District Court, S. D. New York.

May 28, 1971.

suant to Rule 23, F.R.Civ.P.; and (3) for an order permitting intervention of two intervenor-plaintiffs, pursuant to Rules 23 and 24, F.R.Civ.P. Defendants move for an order dismissing plaintiffs' amended complaint, pursuant to Rule 12(b), F.R.Civ.P.

This is an action for declaratory and injunctive relief (28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 1983) brought by plaintiffs, students at Manhattan Community College, on behalf of themselves and all other community college students who desire to attend summer sessions at either a senior college of the City University of New York or a community college of the State University of New York. It was instituted in June 1970 against defendants Chancellor of the City University of New York and the New York City Board of Higher Education (hereinafter "the City defendants"), the plaintiffs alleging that course credit tuition fees are charged to community college students attending summer sessions at community college or senior college, whereas no course credit tuition fees are charged senior college students attending summer sessions at senior college, and that this practice discriminates against community college students who desire to attend summer sessions and violates their rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs move for a preliminary injunction, which was denied by Judge Cooper on June 22, 1970. (Grier v. Bowker, 314 F.Supp. 624 (S.D.N.Y.1970).) In denying plaintiffs' motion, Judge Cooper stated:

> "The community colleges of the State University and the senior colleges of the City University are financed under separate statutory schemes, which statutes are not here challenged. The differing financial structures of the two systems provide a rational basis for the different treatment accorded summer session students in the matter of tuition." (*Id.* at 628)

Thereafter, plaintiffs amended their complaint and named as defendants the Board of Trustees of the State Univer-

John Dewitt Gregory, Community Action for Legal Services, New York City, for plaintiffs, Lawrence J. Fox, John C. Gray, Jr., New York City, David Rudenstine, of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants Chancellor of City University of N. Y. and New York City Bd. of Higher Education, Victor P. Muskin, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for defendants Board of Trustees of State University of N. Y. and Comptroller of State of N. Y., Amy Juviler, Asst. Atty. Gen., of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiffs move (1) for summary judgment, pursuant to Rule 56, F.R.Civ.P.; (2) for a determination that this action may be maintained as a class action, pur-

sity of New York and the Comptroller of the State of New York (hereinafter "the State defendants"). The amended complaint attacks the constitutionality of the state aid formulae for senior and community colleges (New York Education Law §§ 6215, 6216 and 6304) as applied to New York City. Plaintiffs seek a declaratory judgment that the manner in which the City defendants now charge course credit tuition fees for summer sessions is unconstitutional and a permanent injunction restraining the City defendants from charging course credit tuition fees according to the adopted practice. In the alternative, plaintiffs seek a declaratory judgment that the enforcement by the State defendants of the state aid formulae for senior and community colleges (New York Education Law §§ 6215, 6216 and 6304) so as to cause the creation of discriminatory tuition practices for summer sessions administered by the City defendants is unconstitutional, and a permanent injunction restraining the State defendants from enforcing the state aid formulae.

Plaintiffs invoke this court's jurisdiction under 28 U.S.C. §§ 1343(3) and 1343 (4).[1]

Plaintiffs move for summary judgment pursuant to Rule 56, F.R.Civ.P., on the grounds that there exist no material issues of fact and that as a matter of law (1) the discrimination in the tuition fees charged by the City defendants and (2) the state aid formulae for community and senior colleges as applied to New York City by the State defendants violate the Equal Protection Clause of the Fourteenth Amendment.

The City defendants and the State defendants move to dismiss plaintiffs' amended complaint, pursuant to Rules 12(b) (1) and 12(b) (6), F.R.Civ.P., on the grounds that it fails to raise a substantial federal question and that it fails to state a claim upon which relief can be granted.

The community colleges are part of the State University of New York and are financed pursuant to New York Education Law § 6304, which provides in essence that the state financial aid shall be two-fifths of operating costs regardless of fees collected. The balance, less fees collected, is supplied by the City of New York. The senior colleges of the City University of New York are financed pursuant to New York Education Law §§ 6215, 6216, which provide in essence that, after deducting any fees collected, the State and the City of New York shall share equally the net costs of running the senior colleges. The City University of New York, the local sponsor of the community colleges in New York City, is not part of the State University of New York. The New York City Board of Higher Education administers the senior colleges of the City University of New York and the community colleges of the State University of New York in New York City.

Students enrolled in community colleges and senior colleges are not charged course tuition fees during the normal college year. Community college students attending summer sessions at either community or senior colleges are charged course credit tuition fees of $10 per credit hour, while no tuition fees are charged to senior college students who attend summer sessions at senior colleges. Senior college students who attend summer sessions at community colleges are charged course credit tuition fees of $15 per credit hour. Therefore, only senior college students who attend summer sessions at senior colleges pay no tuition fees, and community college students who attend summer sessions are charged tuition fees regardless of whether they attend community colleges or sen-

---

1. While not raised by defendants, there would appear to be some question whether the rights claimed by plaintiffs to be injured by a denial of equal protection are "rights of personal liberty" for purposes of jurisdiction under 28 U.S.C.

§ 1343. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); and Tichon v. Harder, 438 F.2d 1396, at 1400 (2d Cir. Feb. 18, 1971).

ior colleges. Plaintiff Grier, a community college student, alleges that she had to withdraw from the summer session at Manhattan Community College last summer because she could not afford the tuition fees, and that she will be unable to attend this summer if tuition fees are not waived or sharply reduced.

■ In support of their charge that the existing practice of charging tuition fees violates the Equal Protection Clause, plaintiffs contend: (1) that discrimination in the availability of public education can be justified only by a compelling state interest; (2) that the discrepancy in tuition fees charged by the City defendants cannot be justified even under the traditional test of whether the unequal treatment is based upon a reasonable distinction having some rational relationship to a legitimate public policy; and (3) that the tuition fees discriminate against the plaintiffs on the basis of their indigent economic status. Each of these arguments was carefully considered by Judge Cooper in his decision denying a preliminary injunction. With respect to plaintiffs' first argument, Judge Cooper held that the compelling interest test was not applicable in this case, for the reason that:

"[T]he issue now before this Court is not a scheme excluding any one group from regular educational opportunity, but attendance at a summer session without a minimal per credit charge. Involved in this litigation is not the opportunity to pursue elementary education but the taking of courses at college level during the summer to enable a student to complete a college career at a faster pace. This limited interest, as we see it, has not been fastened within the ambit of the concept of fundamental right." (Footnote omitted.) (Grier v. Bowker, *supra*, 314 F.Supp. at 626.)

■■ With respect to plaintiffs' remaining arguments, Judge Cooper continued at 627–629:

"Plaintiffs seek to establish that, similar to race, a classification which adversely affects a particular economic status falls within the category of distinctions that are inherently suspect. In support of this proposition, they rely principally upon Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). However, unlike racial discrimination cases, courts finding a denial of equal protection relating to economic classification have reached such resolution where the state regulation excluded the individual, by reason of his depressed economic status, from exercising a basic right freely available to the more affluent members of society.

\*     \*     \*     \*     \*     \*

"The right asserted by plaintiffs, junior college students, of an opportunity to attend summer school at the college level without payment of any costs cannot fairly be analogized to the rights involved in the cases touched upon above [concerning fundamental rights]. The classification does not directly deny educational opportunities to the indigent community college student who is provided regular courses during the winter terms without payment of a per credit fee.

\*     \*     \*     \*     \*     \*

"There appears to be a rational basis for the distinctions made between community and senior college students. The classification is neither arbitrary nor invidious.

"The community colleges of · the State University and the senior colleges of the City University are financed under separate statutory schemes, which statutes are not here challenged. The differing financial structures of the two systems provide a rational basis for the different treatment accorded summer session students in the matter of tuition.

\*     \*     \*     \*     \*     \*

"Limits on the public purse must be recognized. We cannot require the City to allocate more of its budget than it already does to education. The Con-

stitution requires only that in using the funds made available the lines drawn be rationally based and not invidiously discriminatory. Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)."

Since this court finds that Judge Cooper's opinion is dispositive of plaintiffs' contentions with respect to the City defendants, it turns to plaintiffs' attack on the constitutionality of the state aid formulae for community and senior colleges (New York Education Law §§ 6304, 6215, 6216).

■ Plaintiffs urged that the state aid formulae as applied to New York City by the State defendants create invidious distinctions between students of community and senior colleges without any rational policy. However, the two-year community colleges are designed to serve a different purpose than the four-year senior colleges. New York Education Law § 6303 provides in relevant part as follows:

"1. Community colleges shall provide two-year programs of post high school nature combining general education with technical education relating to the occupational needs of the community or area in which the college is located and those of the state and the nation generally. Special courses and extension work may be provided for parttime students.

\* \* \* \* \* \*

"b. *The curricula in community colleges shall be designed to serve the needs of students who seek two years of post secondary education and whose needs would not ordinarily be met by the usual four-year college curriculum.* However, such colleges shall nevertheless provide sufficient general education to enable qualified students who so desire to transfer after completion of the community college program to institutions providing regular four-year courses \* \* \*" (Emphasis added.)

Hence, the community college system meets a need for higher education not provided for by the senior colleges. This being so, the Legislature could appropriately provide different state aid formulae for the two systems.

Furthermore, the formulae enacted by the Legislature for state aid to community colleges (two-fifths of operating costs regardless of fees collected pursuant to New York Education Law § 6304) and senior colleges (one-half of operating costs after fees are deducted pursuant to New York Education Law §§ 6215, 6216) are clearly neither arbitrary nor irrational since the two college systems provide for differing needs for higher education. As stated in Burruss v. Wilkerson, 310 F.Supp. 572, 574 (W.D.Va. 1969), aff'd 397 U.S. 44, 90 S.Ct. 812, 25 L.Ed.2d 37 (1970), where the District Court rejected claims of impermissible inequality of public expenditure per pupil for basic public education:

"Actually, the plaintiffs seek to obtain allocations of State funds among the cities and counties so that the pupils in each of them will enjoy the same educational opportunities. This is certainly a worthy aim, commendable beyond measure. However, the courts have neither the knowledge, nor the means, nor the power to tailor the public moneys to fit the varying needs of these students throughout the State. We can only see to it that the outlays on one group are not invidiously greater or less than that of another. No such arbitrariness is manifest here."

■ Plaintiffs contend, however, that the state aid formulae cause discrimination on the basis of economic status since they encourage the City defendants to charge tuition fees to community college students, which fees have the effect of denying to indigent students the opportunity to attend summer sessions. However, the state aid formula for community colleges does not encourage tuition fees for community college students since the State pays two-fifths of the operating costs of these colleges whether

tuition fees are charged or not. The state aid formulae, as applied to New York City, do not discriminate against indigent students since they neither require nor encourage the charging of tuition fees to community college students.

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court, conceding that "the most basic economic needs of impoverished human beings" were involved, upheld Maryland's maximum family welfare grant regulation, stating at 486–487, 90 S.Ct. at 1162:

> "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, [31 S.Ct. 337, 55 L.Ed. 369.] It is enough that the State's action be rationally based and free from invidious discrimination."

It is natural that plaintiff Grier would want to take summer courses without charge to enable her to complete her college education at a faster pace and feels that this opportunity is denied her because of her indigency. However,

> "The difficulty of enforcing appropriate judicial remedies in this area [education] suggests that the courts are not the most appropriate institution to guarantee that poverty does not interfere with access to education. The most important state interest is financial; a court would have to recognize the possibility that state legislatures might not appropriate funds which would be necessary to give meaning to its decisions." ("Discrimination Against the Poor and the Fourteenth Amendment." 81 Harv.L. Rev. 435, 452 (1967).)

For the foregoing reasons, the plaintiffs have not shown a violation of their rights under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs' motions for summary judgment, for a class determination, and for intervention are denied.

 Defendants' motion to dismiss the amended complaint is granted.[2]

It is so ordered.

---

2. While plaintiffs seek to permanently enjoin the enforcement of the State statutes on the ground that they are unconstitutional, plaintiffs have not requested the convening of a 3-judge court pursuant to 28 U.S.C. §§ 2281, 2284. Since plaintiffs' attack is "plainly insubstantial," this court may dismiss plaintiffs' amended complaint. Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Lewis v. Rockefeller, 431 F.2d 368, 370–371 (2d Cir. 1970); Heaney v. Allen, 425 F.2d 869, 871–872 (2d Cir. 1970).